BOICE v. McCORMICK et al.

(Supreme Court, Appellate Division, First Department.   July 7, 1905.)

ACTION FOR ACCOUNTING—FINDING—RELATION OF DEFENDANTS INTER SESE—
    PREJUDICIAL ERROR.
        In an action for an accounting under a contract for sharing in the prof-
    its of promoting a corporation, where the undisputed evidence disclosed
    a partnership relation as to defendants inter sese in the contract in ques-
    tion, a finding and judgment that one of the defendants had no interest
    in the contract were prejudicial to his rights.

Appeal from Special Term, New York County.

Action by Hewitt Boice against Henry J. McCormick and an-
other.   On motion by defendant McCormick for a new trial on ex-
ceptions pursuant to Code Civ. Proc. § 1001, and appeal by him
from an interlocutory judgment directing an accounting.   Reversed.

The plaintiff alleges, among other things, that on or about the 15th day of
August, 1901, he made an agreement with the defendant Jones to co-operate
with him to bring about a consolidation of the gypsum plaster mine and mill
properties in the United States, and to furnish certain information and per-
form certain services with the object of inducing the leading millowners to
contract with the defendant Jones as a promoter to accomplish the consoli-
dation, and to pay him "promoting and legal fees"; that it was expressly
agreed "that the profits of the joint venture, after deduction of the personal
expenses of each party, should be equally divided, each meanwhile to bear
his own expenses"; that the plaintiff performed the agreement on his part,
and was instrumental in procuring the execution of an agreement on the
part of the corporation of which he was president, which was a millowner,
and of several other millowners in November, 1901, with the defendants Jones
and McCormick, who were general law partners—McCormick, however, hav-
ing had no interest in the matter—to take over the property of the subscribers
thereto, provided that the owners of three-quarters in value of the 25 prop-
erties sought to be consolidated should also subscribe thereto; that pursuant
to the original agreement the plaintiff continued to render services in obtain-
ing signatures of other millowners; that on the 27th day of December, 1901,
the United States Gypsum Company was incorporated pursuant to said con-
tract with the millowners for the purpose of taking over their properties:
that the plaintiff expended in traveling expenses more than $1,650; that the
original contract, made in November, was modified in January, 1902, the
subscribers and new corporation thereby waiving the failure of the promoters
to secure certain properties sought to be consolidated, and waiving their fail-
ure to finance the company; that in view of these waivers it was agreed
between the defendant Jones and the subscribers and the new company that
Jones, instead of receiving the amount of stock and bonds specified in the
agreement made in November, was to receive for his services such sum as the
advisory committee of the new company should deem the same reasonably
worth; that said committee, with knowledge of the plaintiff's claim to a
one-half interest in the fees to be paid to Jones, fixed the value of the services
rendered at 2,870 shares of preferred and 2,130 shares of the common stock
of the new company of the par value of $100 each; that of this amount 143
shares of the preferred and 815 shares of the common stock have been delivered
to Jones, 250 shares of the preferred stock have been retained in the treasury
of the new company to meet expenses which Jones agreed to defray, and
1,189 shares of preferred and 815 shares of the common stock were deposited
in escrow with the trust company, with instructions not to deliver the same
to the defendant Jones until after the 12th day of February, 1903, and that
this deposit was made for the purpose of giving the defendant time to arrive
at a proper settlement with Jones, or to take such steps as he might deem
advisable to enforce his rights; that the plaintiff has fully performed the
agreement on his part, and that the defendant Jones refuses to account or

to pay over to him his share of the profits consisting of the stock received and to be received from the new company; that the defendants Jones and McCormick have threatened to take possession of the stock deposited with the trust company in escrow, and to hold or dispose of the same in fraud of or to the exclusion of the plaintiff's rights therein; that Jones "is of little pecuniary responsibility, having against him unpaid judgments of record in the county and state of New York," and that plaintiff would suffer irreparable loss and damage if such stock were surrendered by the trust company to the defendants Jones and McCormick, or either of them; that there is no property "of the said partnership between plaintiff and the defendant Jones" excepting said stock received and to be received from the new company for services in performing the same, and that "the only venture and business of said partnership, as hereinbefore stated, has been completely transacted, and all the gross profits thereof, as aforesaid, have been turned over to the defendant Jones." The judgment demanded by the plaintiff is that "the said partnership between himself and the defendant Jones be adjudged dissolved, and an accounting taken of all the said partnership dealings and transactions," and of the moneys and other property received and paid or otherwise disposed of by the parties in relation thereto, and that Jones be decreed to pay the plaintiff what shall appear on such accounting to be due from him, "the plaintiff being ready and willing to pay to the defendant Jones what, if anything, shall appear to be due" to him; that a receiver of the property and effects "of the partnership between the plaintiff and the defendant Jones" be appointed, with the usual powers and duties; and that the defendants be directed to turn over to the receiver all of said stock and property "of the said copartnership" that may be in their possession or under their control, and that the defendants be enjoined from collecting or receiving debts due or owing "to the said copartnership, and from using or applying any of the said copartnership funds or property to their own use, until further order of the court."

The defendants Jones and McCormick interposed a joint answer, substantially admitting all the material facts alleged, except the agreement alleged to have been made between the plaintiff and defendant Jones, the rendition of the services thereunder, and that McCormick has no interest in the agreement and has no interest in the stock, and alleging that they are entitled to it all as copartners.

The trust company admits its possession of the stock, and alleges that the same was delivered to it on the 12th day of December, 1902, to hold until February 12, 1903, with instructions to deliver the same at the expiration of that period to Jones and McCormick; and it denies knowledge or information sufficient to form a belief concerning the other material allegations, and submits its rights to the court.

The court found that an agreement was made between the plaintiff and the defendant Jones to share the proceeds of the joint venture equally, as alleged, and that the defendant McCormick was not interested therein, as alleged; that plaintiff fully performed said contract; that an agreement between Jones and McCormick and certain millowners was made on the 8th day of November, 1901, as alleged, but that defendant McCormick had no interest therein; that the same was modified on the 10th day of January, 1902, as alleged, and that the agreement for promoter's fees was modified, as alleged; that part of the 5,000 shares of stock agreed to be given for promoter's fees to Jones as alleged has been delivered, and that part of the promotion fees were deposited with the trust company as alleged, to be held, however, "in escrow and in trust for plaintiff, defendant Jones, and defendant McCormick" as their interests may appear, and for the satisfaction of the plaintiff's claim, and that 251 shares of preferred and 500 shares of common stock had not been delivered; that the installment of stock paid on account of promotion fees was, with the consent of the plaintiff, "in form" paid to the defendants "Jones and McCormick as partners," but that plaintiff's consent was given on condition that the new company retain sufficient of the stock to be given as promoter's fees to satisfy his claim "to a one-half interest in the entire amount of such fees"; that the joint venture "has been completely transacted on the part of said parties," and that the stock delivered and to be delivered

by the new company constitutes the receipts of the joint venture, and the value thereof exceeds the expenses incurred by the plaintiff, but that it is impossible without an accounting to determine the expenses incurred by the plaintiff and Jones, which, under the original agreement, were to be first deducted, and that Jones has refused to account. As conclusions of law the court found that the 5,000 shares of stock delivered and to be delivered by the new company constitutes the promotion fees which, under the original agreement, the plaintiff is entitled to have divided equally between himself and Jones after deducting their respective personal expenses of the joint venture; that the plaintiff is entitled to an accounting for the purpose of ascertaining said expenses; that neither McCormick nor Jones and McCormick as partners, nor their creditors, have any interest in the subject-matter of the action inconsistent with the plaintiff's rights as defined by the decision; that the stock deposited with the trust company was deposited primarily to satisfy pro tanto the plaintiff's claim and as security for the satisfaction of any judgment in his favor thereon, and that the stock was held by the trust company until delivered to the defendant McCormick as receiver, he having been duly appointed receiver, as prayed, in the complaint, pending the action, and an extra allowance of $500 is awarded the plaintiff against the defendants Jones and McCormick, to be included in the final judgment, and an interlocutory judgment in accordance therewith and continuing the receivership is awarded. The interlocutory judgment itself does not follow the decision in some respects, and in others it is not authorized thereby. The decision made no award of costs except the extra allowance of $500; but the interlocutory judgment awards costs of the action, including the costs of the receivership and of all references herein, said costs to be taxed after final judgment herein, and included in said final judgment, "in favor of the plaintiff and against the defendants Jones and McCormick, and an additional allowance of five per cent. of the subject-matter involved; such allowance not to exceed $2,000"; and it contains a further provision that upon the confirmation of the referee's report the plaintiff shall be entitled to final judgment, among other things, for the costs of the action, including the costs of the receivership and of references, and an additional allowance of $500. The interlocutory judgment further directs that the receiver "pay to the plaintiff and credit to the defendant Jones, out of the cash held by him as such receiver, the amount of their personal expenses, respectively, for the reimbursement of which stock was sold by said receiver as directed by the interlocutory judgment herein, and shall deliver to the plaintiff so much of the cash and stock remaining in his hands as shall be necessary in order to give to plaintiff one-half of the amount of the stock constituting the receipts of the joint venture * * * after deducting the amount necessary to reimburse the plaintiff and to defendant Jones the amount of their personal expenses in said joint venture"; that the receiver sell some or all of the stock received from the trust company, as may be necessary, as therein provided, to reimburse the plaintiff for his expenses; and contains conflicting provisions with reference to paying the plaintiff not only his own expenses, but the amount of the personal expenses of Jones as well, and directing that Jones be credited with the total amount of the expenses of both and other provisions concerning the application of the stock and adjustment of their personal expenses between them, and proceeds upon the theory that Jones is to be allowed and charged upon the theory that he is interested individually only in the stock which he has received and is to receive, and should account therefor individually, and that the defendant McCormick has no interest therein.

Argued before O'BRIEN, P. J., and PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Augustus N. Hand, for appellant.
Richard F. Goldsborough, for respondent.

LAUGHLIN, J. If the decision itself could be sustained, the interlocutory judgment might be modified to conform thereto by eliminating the unauthorized provisions with reference to a sale of

the stock and an adjustment of the personal expenses between the plaintiff and Jones, and the dual award of an extra allowance, and by adding a provision that the promotion expenses payable under the agreement of November 8, 1901, out of the stock that was to be issued to Jones and McCormick, should also be deducted before division, and, as modified, affirmed. We are of opinion, however, that the decision itself is not sustained by the evidence, at least in so far as it is found and adjudged that the defendant McCormick had no interest in the contract to which he was a party as a member of the firm of Jones & McCormick, or in the promotion fees received for the services rendered therein consisting of the stock in question. Assuming that the court was authorized in finding that the plaintiff, by virtue of his agreement with the defendant Jones, was entitled to an accounting for this stock, and owned a half interest therein, subject to deduction before division of the personal expenses of the defendant Jones and himself, still the undisputed evidence shows that the other half interest was owned by the defendants Jones and McCormick as partners. In their answer the defendants Jones and McCormick united in claiming that they owned all of the stock, the fruits of the promotion, as copartners. The contract which resulted in the payment of this stock by the consolidated company was made in their names as copartners. The evidence shows that both rendered services in the matter. Their claim in their answer, their attitude on the trial, as disclosed by the record, and all of the evidence, except some declarations claimed to have been made by the defendant Jones, but denied by him, are inconsistent with their being interested otherwise than as partners. At most they merely claim more than they are entitled to—all, when their interest is only half. It is quite likely that the learned court did not intend to determine finally the rights of Jones and McCormick as between themselves, as is indicated by a clause in one of the findings of fact that the defendant McCormick had no interest in the contract between the plaintiff and the defendant Jones, or in the proceeds thereof, "unless in the interest of defendant Jones therein subsequent to December, 1901." This was based upon evidence indicating that down to that time McCormick had asserted no interest, and the defendant Jones had declared that McCormick had no interest, notwithstanding the contract in the firm name. It was, of course, proper to refrain from taking an accounting as between the defendants Jones and McCormick, but it should have been adjudged that the interest that they or either of them had, whatever it was, whether the half or the whole promotion fees, belonged to them as partners. It is difficult to comprehend why findings inconsistent with the claim and evidence of these defendants, and quite immaterial to the plaintiff's interests, should have been insisted upon. If, as the plaintiff claims, the contract which Jones negotiated with him was that he was to receive one-half of the stock and bonds received as promotion fees, it was immaterial to the plaintiff whether the contract was made with Jones individually or with Jones representing his firm; and it was immaterial to the plaintiff whether Jones individually should receive

the other half, or whether the firm of Jones & McCormick should receive it. The plaintiff, however, has succeeded in obtaining an erroneous decision which might bar McCormick's right to share in the stocks or moneys received by Jones which the latter is to be permitted to retain. We intimated upon the former appeal involving the injunction order that the plaintiff might be able to recover either upon the theory that Jones was acting individually or representing his firm. 86 App. Div. 613, 83 N. Y. Supp. 230. Jones concedes that he made a contract with the plaintiff, but claims that, while the plaintiff was informed that both the defendant McCormick and another were interested with him in the consolidation, the contract was made by himself only, and it differed materially from that testified to by the plaintiff, and upon which the recovery has been had. Since, however, the defendants Jones and McCormick maintain that their rights were as indicated in the agreement of November 8th, namely, that they, as partners, were interested in the promotion fees, and since that agreement, according to the plaintiff's testimony, was largely the result of his efforts acting pursuant to his contract with the defendant Jones, and his future services in furtherance of the consolidation were rendered with full knowledge of his claim on the part of both Jones and McCormick, there can be no doubt but that the original contract negotiated by Jones, if to the effect claimed by the plaintiff, would be binding upon the firm. The error already pointed out, therefore, requires a new trial.

It follows that the interlocutory judgment should be reversed, and the motion for a new trial granted, with costs to appellant to abide the event. All concur.